# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

ANNE O'BOYLE, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

v.

GENPACT SERVICES LLC,

        Defendant.

Case No.: 17-cv-1397

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, ch. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Anne O'Boyle is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her debts allegedly incurred for personal, family, or household purposes, namely a personal credit card.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she allegedly engaged in consumer credit transactions – purchases of household goods and clothing with a personal credit card.

6. Defendant Genpact Services LLC ("Genpact") is a foreign limited liability company with its principal offices located at 1155 Avenue of the Americas, New York, NY 10036.

7. Genpact is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Genpact is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. Genpact is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

**FACTS**

10. Sometime prior to November 17, 2016, Plaintiff obtained an American Eagle Outfitters, Inc. ("American Eagle") credit card, used solely for personal, family, or household purposes, namely purchases of household goods and clothing.

11. On or about November 17, 2016, American Eagle mailed an account statement to Plaintiff. A copy of this account statement is attached to this complaint as Exhibit A.

12. Exhibit A contains the following:

| Statement date: 11/17/16 | Days in billing cycle: 30 | | Account number: ▮▮▮▮7022 |
|---|---|---|---|
| Transaction Summary (Continued) | | | |
| Trans Date  Post Date  Reference Number | Description of Transaction or Credit | | Amount |
| | TOTAL INTEREST FOR THIS PERIOD | | $3.65 |

| 2016 Totals Year-To-Date | |
|---|---|
| Total Fees Charged in 2016 | $95.00 |
| Total Interest Charged in 2016 | $8.85 |
| Total Interest Paid in 2016 | $0.00 |

2

13. Exhibit A also contains the following:

> **AE° Credit Card**
>
> ANNE OBOYLE
> Account Number ███████7022
>
> ae.com
> Mobile Service: ae.mycreditcard.mobi
> Customer Service: 1-800-945-6596
>
> **Summary of Account Activity**
> Previous Balance         $164.96
> + Fees Charged            $35.00
> + Interest Charges         $3.65
> New Balance              $203.61
>
> Credit Limit             $170.00
> Available Credit           $0.00
> Statement Closing Date 11/17/2016
> Days in Billing Cycle         30
>
> **Payment Information**
> New Balance              $203.61
> Amount Past Due           $94.00
> Total Minimum Payment Due $135.00
> Payment Due Date       12/10/2016
>
> **Late Payment Warning:** If we do not receive your Total Minimum Payment Due by the Payment Due Date listed above, you may have to pay a late fee up to $35.00.
>
> **Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

14. Exhibit A states that, as of November 17, 2016, the balance of Plaintiff's American Eagle credit card account with an account number ending 7022 was $203.61.

15. On or about November 19, 2016, Genpact mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "Synchrony Bank" for Plaintiff's "AEO, Inc. Credit Card Account" with an account number ending in 7022. A copy of this letter is attached to this complaint as Exhibit B.

16. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

17. Upon information and belief, Exhibit B is a form debt collection letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

18. Upon information and belief, Exhibit B was the first debt collection letter Defendant mailed to Plaintiff.

19. Exhibit B contains the statutorily required validation notice, advising Plaintiff of her rights to dispute the debt:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion of this debt, this office will assume that this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute this debt or any portion of this debt, this office will obtain verification of this debt or obtain a copy of a judgment and will mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

3

20. Exhibit B also contains the following:

> November 19, 2016
>
> **Account Information**
> Creditor: Synchrony Bank
> *Reference: AEO, Inc. Credit Card Account*
> Account: XXXXXXXXXXXX7022
> Reference: ▊▊▊▊▊▊▊2252
> Balance Due: $203.00

21. Exhibit B states that, as of November 19, 2016, the balance of Plaintiff's American Eagle credit card account with an account number ending in 7022 had a balance of $203.00.

22. Exhibit B also contains the following:

> The total account balance as of the date of this letter is shown above. Your account balance may increase because of interest or other charges, if so provided in your agreement with your creditor.

23. Based on Exhibits A and B, the unsophisticated consumer would have no idea how much was owed on Plaintiff's American Eagle credit card account when Genpact mailed its letter on November 19, 2016.

24. Exhibit A, sent by the creditor, informed Plaintiff that the balance was $203.61 on November 17, 2016.

25. Exhibit B, sent by a third-party debt collector, informed Plaintiff the balance was $203.00 two days later, on November 19, 2016.

26. Based on the balances stated, any consumer would be confused as to the amount that was owed on the account at any given time throughout this period.

27. Plaintiff did not make a payment on the account that would account for any reduction in the amount owed.

28. Moreover, Exhibit B expressly states that the "The total account balance as of the date of this letter is [$203.00]. Your account balance may *increase* because of interest or other charges, if so provided in your agreement with your creditor." (emphasis added)

29. Upon information and belief, when American Eagle transmitted the account to Genpact for debt collection, American Eagle provided Genpact with Plaintiff's account terms, including Plaintiff's interest rate.

30. Upon information and belief, Genpact miscalculated Plaintiff's account balance, stating Plaintiff's balance was $203.00 on November 19, 2016 when it was actually $203.61 or a greater amount.

31. Misstating Plaintiff's account balance is material because it is a false statement directly concerning the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(a)

32. Plaintiff was confused by Exhibits A-B.

33. Plaintiff had to spend time and money investigating Exhibits A-B and the consequences of any potential responses to Exhibits A-B.

34. Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiff on the consequences of Exhibits A-B.

## THE FDCPA and WCA

35. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly

5

prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

36. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

37. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

38. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In

6

*re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989)

39. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to

7

encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

40. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

41. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

42. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

43. 15 U.S.C. § 1692e(2)(a) specifically prohibits: "The false representation of—the character, amount, or legal status of any debt."

44. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

45. 15 U.S.C. § 1692g states:

> a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;

46. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might

9

be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

47. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

48. <u>Exhibit A</u> misstates the amount of the debt on the date that the letter was sent to the consumer.

49. Misstatement of Plaintiff's debt is a *per se* violation of 15 U.S.C. § 1692g(a)(1). There is no materiality inquiry required where a debt collector fails to make a disclosure required under § 1692g. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 ("for good reason, we have not extended the implicit materiality requirement of § 1692e to reach claims under §1692g(a).").

50. Moreover, misstatement of Plaintiff's debt is a material false statement (*see Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009)) because it misleads the unsophisticated consumer about the amount of the debt. 15 U.S.C. § 1692e(2)(a).

10

## THE WISCONSIN CONSUMER ACT, CH. 421-427 WIS. STATS.

51. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

52. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

53. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

54. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

55. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

56. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and

11

injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

57. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

58. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

59. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer."

## COUNT I – FDCPA

60. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

61. Exhibit B does not state the balance of Plaintiff's account on the day the letter was sent in a non-confusing manner. Exhibit B understates the amount of the debt and misleads the unsophisticated consumer.

62. Exhibit B also states that he balance "may increase because of interest or other charges," when it has actually decreased since Exhibit A was sent to Plaintiff.

63. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), and 1692g(a)(1).

12

## COUNT II - WCA

64. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

65. Exhibit B does not state the balance of Plaintiff's account on the day the letter was sent in a non-confusing manner. Exhibit B understates the amount of the debt and misleads the unsophisticated consumer.

66. Miscalculating Plaintiff's debt could reasonably be expected to harass the consumer. If Plaintiff tendered a $261.00 payment to Defendant, Defendant and the creditor could continue to attempt to collect an additional balance from Plaintiff. Even if Plaintiff called Defendant to obtain the most up-to-date information regarding the balance of the account, there would be no way to tell whether Defendant was properly calculating the balance.

67. Defendant violated Wis. Stat. § 427.104(1)(h).

## CLASS ALLEGATIONS

68. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were a sent collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes (d) between October 12, 2016 and October 12, 2017, inclusive, (e) that were not returned by the postal service.

69. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

70. There are questions of law and fact common to the members of the each class, which common questions predominate over any questions that affect only individual class

members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

71. Plaintiff's claims are typical of the claims of the members of each class. All are based on the same factual and legal theories.

72. Plaintiff will fairly and adequately represent the interests of the members of each class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

73. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

74. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: October 12, 2017

**ADEMI & O'REILLY, LLP**

By: s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110

(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

15